[No. 37933. En Banc. April 7, 1966.]

THE STATE OF WASHINGTON, on the Relation of Ralph W. Starkey et al., Appellant, v. ALASKA AIRLINES, INC., Respondent.*

*Coney & Collier,* for appellants.

*Allen, DeGarmo & Leedy* and *Seth W. Morrison,* for respondent.

DONWORTH, J.—This is the second legal action since 1963 which has resulted from the efforts of the majority shareholders and their directors to exclude directors-elect from the board of directors of Alaska Airlines, Inc., after the directors-elect were elected by a minority shareholder

group by the use of cumulative voting. The first case was tried in October, 1963, and a decision unfavorable to Alaska Airlines, Inc., the defendant, was rendered, from which Alaska Airlines, Inc., has appealed.

The present case arose because Alaska Airlines, Inc., took steps which would have rendered the decision in the first case moot even before it could be heard on appeal, unless the validity of the subsequent steps were successfully challenged in court. Defendant, Alaska Airlines, Inc., won the second suit at the trial level, and that decision is now here in this appeal.

The two cases were heard on appeal together because they were so closely interrelated, and because the second case potentially made the first case moot. For the purpose of this opinion, it is necessary to discuss only the occurrences subsequent to the decision in the first case, except for a very brief history.

The majority shareholder faction and the minority shareholder faction engaged in proxy solicitations prior to the August, 1963, election of directors by shareholders. In August, 1963, at the annual shareholders' meeting in Seattle, the minority successfully elected 3 directors, Ralph W. Starkey, Homer W. Robinson, and Raymond W. Marshall, out of the total of 11 directors elected, using the cumulative voting method. Due to a bylaw change not challenged in this lawsuit, the number of directors for Alaska Airlines, Inc., was increased from 11 to 13, thereby reducing to 2 the number of directors who could be elected by the minority faction voting their shares cumulatively in the 1964 election.

The statutory history in Alaska Business Corporation Law becomes very important. Alaska Airlines, Inc., was incorporated in Alaska in 1937, under Alaska Laws, 1931, chapter 8, p. 31. Under that statute, only cumulative voting for directors was allowed (that is to say, it was the option of each shareholder to decide whether he would vote his shares by the direct or cumulative method). There was no reservation of the power to amend, alter, or repeal pro-

visions of this statute included within these statutory provisions.

The territory of Alaska, in 1957, adopted the Model Business Corporations Act, which was enacted as Laws of Alaska, 1957, chapter 126, and is now codified as Alaska Statutes, Title 10, chapter 5. That act contained a section, later codified as Alaska Statutes § 10.05.162, which provided that each shareholder in an Alaska corporation should have the option of deciding whether or not he would vote his shares cumulatively. Section 153 of Laws of Alaska, 1957, chapter 126, did reserve to the Alaska legislature the power to amend, repeal, or modify this act. On March 9, 1964, the Alaska legislature amended § 10.05.162 by the addition of the italicized portion at the end of the section, which now reads:

> Sec. 10.05.162. Voting for Directors and Cumulative Voting Option. At an election for directors every shareholder entitled to vote may vote, in person or by proxy, the number of shares owned by him for as many persons as there are directors to be elected and for whose election he has a right to vote, or may cumulate his votes by giving one candidate as many votes as the number of directors to be elected multiplied by the number of his shares equals, or by distributing these votes on the same principle among any number of candidates. *Any corporation may provide in its bylaws that shareholders shall not cumulate their votes but must vote shares held by them for as many persons as there are directors to be elected.* (Italics ours.)

March 10, 1964, this amendment became effective. On June 1, 1964, the board of directors of Alaska Airlines, Inc., amended the bylaws of the corporation to read:

> Sec. 6. Every stockholder shall have the right to vote in person or by proxy the number of shares of stock owned by him. Stockholders shall not cumulate their votes but must vote shares held by them for as many persons as there are Directors to be elected.

Prior to this amendment, the bylaw provision had read:

> Sec. 6. Every stockholder shall have the right to vote in person or by proxy, for the number of shares of stock

owned by him for as many persons as there are directors or managers to be elected, or to cumulate said shares and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them on the same principle among as many candidates as he shall think fit.

On July 29, 1964, Starkey and Robinson, the relators in this case, filed an application for an alternative writ of mandamus in the Superior Court for King County to require the corporation to use the cumulative voting method. The election of directors was to be held at the annual shareholders' meeting in Seattle on August 4, 1964. The matter could not be heard on its merits prior to that time, and, therefore, the trial court entered an order which permitted Alaska Airlines, Inc., to hold the election for the directors using the direct method (which would normally have been prohibited under the alternative writ), but also required the corporation to hold an election using the cumulative method of voting for directors. The matter was then to be further heard by the trial court after the result of each method of voting was known and a determination made by the trial court as to which method of voting was valid.

At the election held August 4, 1964, in Seattle, under the cumulative voting method, Starkey and Robinson were elected directors by a wide majority over any of the candidates supported by the majority shareholders. Under the direct (noncumulative) method of voting, neither Starkey nor Robinson was elected as director.

At the trial on the merits, it was made clear by both counsel that there were no issues of fact. No testimony was received, and counsel stipulated as to the relevant factual matters, such as to the amendment of the corporate organization statute by the Alaska legislature, the amendment of the bylaws by the board of directors of Alaska Airlines, Inc., and the results of the vote by the two different methods in the election of directors.

Appellants Starkey and Robinson assign error to the trial court's conclusions of law Nos. 2 and 3, which read:

2. That the amendment by the Board of Directors of

Alaska Airlines, Inc. on June 1, 1964, of the corporation's By-laws to eliminate cumulative voting for directors at stockholders meetings was a legal amendment in all respects, the election of directors at the 1964 annual meeting by the direct voting method was proper and in accordance with the By-law then in effect, and the Plaintiffs Robinson and Starkey were not elected as directors of Alaska Airlines, Inc. at the 1964 annual meeting.

3. That the Defendant is entitled to recover its costs herein incurred.

Appellants have argued, in support of this assignment of error, that the state of Alaska could not amend its statutory grant of cumulative voting method to minority shareholders of corporations incorporated in Alaska under the 1931 Uniform Business Corporations Act. This is the statute under which Alaska Airlines, Inc., was organized in 1937, as was stated above in this opinion. Appellants argue that at the time of incorporation there was no power to amend, alter, or repeal reserved to the Alaska legislature either by the 1931 statute or by any prior organic act or statute, and that this right to cumulative voting has become part of the contract between the shareholder and the corporation and between the shareholder and the state.

Certain principles of law concerning corporations which are applicable to this problem should be stated, even though it is doubtful if any party to this cause would seriously dispute them. They are:

The United States Constitution, article 1, § 10, states:

1. No State shall . . . pass any . . . law impairing the obligation of contracts, . . . .

■ *Trustees of Dartmouth College v. Woodward,* 17 U. S. (4 Wheat.) 518, 4 L. Ed. 629 (1819), holds that the state cannot alter or repeal a corporate charter unless it has reserved the power to do so in the charter or the law giving the corporation its existence.

In 7 Fletcher, Cyclopedia Corporations § 3658, pp. 815-816 (1964 Rev.), is the statement of the general principle of

this case, as it has been construed to date. This treatise reads:

> The charter of a corporation, whether conferred by special act or existing under general laws, being, as stated above, a contract, as such is protected by constitutional provisions. Where the constitutionality of an act of the legislature amending or repealing a corporate charter is challenged, the question is whether the act violates any of the litigant's constitutional rights to have the obligation of his contract unimpaired and his property and liberty uninterfered with except by due process of law, and to the protection of equal laws. The clause of the Federal Constitution which declares that no state shall pass any law impairing the obligation of contract, and which applies to the various states of the Union, extends to the contract existing with the corporation in all its aspects. Thus it extends to the obligations of the contract between the corporation and the state, between the stockholders and the state and between the corporation and the stockholders. And in the absence of a provision reserving the right to alter, amend or repeal a corporate charter, subsequent legislation, whether general or special in character, impairing the obligation of the charter is beyond the power of the legislature. (Footnotes omitted.)

Respondent, Alaska Airlines, Inc., does not argue that the principles just set forth are not the present law in every jurisdiction in the United States. Its position is that the Alaska legislature had the power to amend, alter, or repeal provisions of the 1931 corporation statute, even though that statute did not reserve such power to the legislature. The source of the power argued for by Alaska Airlines, Inc., is the United States Congressional Act, which first set up a civil government for the District of Alaska in 1884, chapter 53, 23 Stat. 24 (1884).

Section 7 of that act provides:

> That the general laws of the State of Oregon now in force are hereby declared to be the law in said district [Alaska], so far as the same may be applicable and not in conflict with the provisions of this act or the laws of the United States; . . . .

In the case of *Alaska Gold Mining Co. v. Ebner,* 2 Alaska Reports 611 (1905), the Alaska District Court held that the above quoted provision incorporated into the law of Alaska the Oregon business corporation statute in effect in 1884. That statute did not include a reservation of power to amend, alter, or repeal, nor did the case concern the question of the legislative power to amend, alter, or repeal such statutes.

In Oregon, in 1884, the power to amend, alter or repeal corporation statutes was reserved to the legislature by the Oregon Constitution, Art. 11, § 2, which read:

> Corporations may be formed under general laws, but shall not be created by special laws, except for municipal purposes. All laws passed pursuant to this section may be altered, amended, or repealed, but not so as to impair or destroy any vested corporate rights.

It is agreed by the parties to this case that *if* the Congress intended, by the provision of the Congressional Act quoted above, to incorporate Art. 11, § 2, of the Oregon Constitution, that this power to amend, alter, or repeal was continued in effect by the congressional act which is known as the Territorial Organic Act, enacted by Congress on August 24, 1912, which created the territorial legislature. In that act, chapter 387, § 3, 37 Stat. 512, provided that:

> [A]ll the laws of the United States heretofore passed establishing the executive and judicial departments in Alaska shall continue in full force and effect until amended or repealed by Act of Congress; . . . except as herein provided all laws now in force in Alaska shall continue in full force and effect until altered, amended, or repealed by Congress or by the legislature:
> . . . .

It is argued by respondent simply that the term "general laws" includes constitutional provisions as well as statutes, and that nothing in any of the subsequent acts of the Alaska legislature pertaining to corporations is inconsistent with the Oregon constitutional provision reserving the power to amend, alter, or repeal provisions of any corporation statute.

Appellant's argument in opposition to this position may be summarized as being that the intent of the United States Congress was to incorporate into the laws of Alaska the general code and case law of Oregon as distinguished from the Oregon Constitution, which is properly to be classified as "organic" law as distinguished from "general" law.

■ We have read the congressional debate on chapter 53, 23 Stat. 24, recorded in the Congressional Record of 1884, and find that it tends to support appellant's position. The congressional purpose of the act was to create an inexpensive and abbreviated civil government for Alaska for an interim period. The act was to be, in a sense, the organic law of Alaska. There was to be *no legislature* for Alaska created by the act.[1] There was a need for a ready-made body of statutory law. Therefore, the original version of the act incorporated the Oregon Code.[2] When the words "general laws" were substituted for the word "code," the purpose was to avoid incorporating special code provisions as distinguished from general code provisions. There is a reference in the congressional debates to the advisability of using the Oregon Code as distinguished from the Washington Territorial Statutes, because Congress desired to adopt for the Territory of Alaska the more mature set of statutory laws of a state.[3]

There is a recognition in the debates that, if the laws made applicable to Alaska needed amendment prior to the establishment of a legislature, then the Congress would enact the legislation.

In reading carefully the Congressional statutory provision which applied the law of Oregon, we particularly note two italicized portions of that provision:

That the general laws of the State of Oregon *now in force* are hereby declared to be the law in said district,

[1] See 15 Congressional Record, Part 4, p. 4121 (1884). (Bottom of first column and top of second column.)

[2] See 15 Congressional Record, Part 1, pp. 527-529 (1884), and Congressional Record, Part 4, p. 4124 (1884).

[3] See 15 Congressional Record, Part 1, p. 529 (1884).

*so far as the same may be applicable* and not in conflict with the provisions of this act or the laws of the United States; . . . . (Italics ours.)

The two emphasized portions constitute the basis for our decision as to the invalidity of respondent's argument.

Since it was the intent of Congress to make applicable to Alaska *only* the Oregon law as it existed on May 17, 1884, and not to include any subsequent amendments thereto made by the Oregon legislature or voters as applicable to Alaska,[4] we fail entirely to see how Art. 11, § 2, of the Oregon Constitution had any *conceivable application* to the Alaska situation at that time. The Oregon legislature and voters *could not* change the corporation statute in so far as it applied to Alaska. The laws of Alaska were frozen in 1884, unless amended by Congress. Alaska had no legislature or legislative power of any kind. Thus, the power of Oregon to amend corporation laws derived from *its* constitution or subsequent legislation simply could not be applicable to this case.

In connection with the question of applicability of this particular Oregon constitutional provision to the Alaska situation in the interim between 1884 and 1912, we believe it is important to recall that the power to enact legislation was in the Congress which is not in any manner restricted by Art. 1, § 10, of the United States Constitution. The proscription against the enactment of laws impairing the obligation of contracts does not apply against the federal government. Therefore, during that period there was no need for such a provision as Art. 11, § 2, of the Oregon Constitution. We are again compelled to conclude that prior to the time of the enactment by Congress of the 1912 territorial organic act, when the territorial legislature was created, there was no need of or use for the reservation of power to amend, alter, or repeal the corporate law pertaining to Alaska corporations. Therefore, it was not applicable.

---

[4]This point was specifically covered by the debates in 15 Congressional Record, Part 1, pp. 527-529, and Part 4, p. 4124 (1884).

We believe that, if the Constitution of Oregon was intended by Congress to be incorporated in part into the law of Alaska, it was only those parts applicable for the meaning and understanding of Oregon statutory and case law, and not those provisions which would give governmental powers to nonexistent branches of government.

It appears from the arguments of the parties and from our own research that not until the enactment of the Model Business Corporations Act in 1957 did the Alaska legislature ever reserve the power to amend, alter, or repeal the corporation statute within its own enactments.

In 7 Fletcher, Cyclopedia Corporations § 3676, p. 850 (1964 Rev.), the author states:

> The original charter rights of a corporation to continue its corporate existence in accordance with the grant are ordinarily not affected by subsequent constitutional or statutory provisions, and so the adoption of a constitutional provision or the enactment of a statute reserving the power to amend or repeal does not affect existing corporations which were created or organized before the reservation of such power. (Footnotes omitted.)

Hence, the reservation of power to amend in the 1957 act could not be applied to Alaska Airlines, Inc., or to the rights of its minority shareholders to vote their shares cumulatively.

In 7 Fletcher, Cyclopedia Corporations § 3657, pp. 812-814, it is further stated:

> While, generally speaking, a charter of a corporation stands on a somewhat different footing from contracts between private parties, it is usually regarded as a contract, and as such is protected by state and federal constitutional provisions. It is a contract between the state and the corporation and its members; between the corporation and its stockholders, and between the stockholders themselves. This is true not only of charters conferred by special act, but also of those which exist under general laws. (Footnotes omitted.)

It is axiomatic that the provisions of the statute under which a corporate charter is granted is an integral part of the charter and binds all parties to the contract, the state,

the corporation, and the shareholders. 7 Fletcher, Cyclopedia Corporations § 3635, pp. 776-778 (1964 Rev.).

If we were to hold that the 1964 amendment to the Alaska Corporations Statute authorized Alaska Airlines, Inc., to provide by its bylaws for the use of direct voting only in the election of directors, then we would be holding that the state legislature can authorize the directors to do what the state legislature had previously, by contract, originally agreed that the majority shareholders could not do.

In short, we believe that the case of *Trustees of Dartmouth College v. Woodward,* 17 U.S. (4 Wheat.) 587 (1819), would be applicable, and that the 1964 statute, as so construed, would be unconstitutional.

■ However, it is a basic rule of statutory construction that a statute should be construed so as to be constitutional, if reasonably possible.

We hold that the 1964 amendment to the Alaska Laws, § 10.05.162 (Laws of Alaska, 1957, ch. 126, § 31) was intended to apply only as provided in § 151, which provides:

> The provisions of this Act shall apply to all existing corporations organized under any general act of Alaska providing for the organization of corporations for a purpose or purposes for which a corporation might be organized under this Act, *where the power has been reserved to amend, repeal or modify the act under which such corporation was organized and where such act is repealed by this Act.* (Italics ours.) Laws of Alaska, 1957, ch. 126, § 151.

Since the 1931 act, under which Alaska Airlines, Inc., was organized, did not contain a reservation of power to amend, repeal, or modify that act, and since no other source of such power has been shown to exist, we must conclude that the legislature meant what it said in § 151, that it intended to exercise only the powers it had previously reserved.

Especially, we believe that this construction is further supported by the wording of Laws of Alaska, 1957, ch. 126, § 154, which reads:

> The repeal of a prior act by this Act shall not affect any right accrued or established, or any liability or pen-

alty incurred, under the provisions of such act, prior to the repeal thereof.

■ In view of these provisions, we must accept the position that the Alaska legislature, in 1957 and in 1964, intended those statutes to affect only those corporations created after their enactment or those created under circumstances in which the legislature had specifically reserved the power to amend, repeal, or modify the statutes under which they were organized. Alaska Airlines, Inc., is not such a corporation.

It follows that the action of the board of directors of Alaska Airlines, Inc., in adopting the bylaw above referred to on June 1, 1964, was without any legislative authority, and contrary to the statute under which the corporation was organized. The corporation could not avail itself of the option granted by the 1964 amendment to use only direct voting to elect directors, *unless* those shareholders who hold sufficient votes to elect a director by the cumulative method of voting agreed to the change of bylaws to provide for the direct method of voting. Minority shareholders in this case have objected to the direct method of voting, and have actually cast votes sufficient to elect two directors by the cumulative method of voting. It is undisputably clear that it was within their rights as shareholders to vote by the cumulative method, and to have seated the directors thus elected, unless other legal reasons exist for not seating those directors.

Alaska Airlines, Inc., as respondent, has argued that, even though the trial court may have been incorrect on the merits, the judgment dismissing the action should be upheld on the ground of the doctrine of "visitorial powers." The brief of respondent states:

> This issue is significant principally because even if it should be determined that the trial court was in error in its decision on the merits in this cause, it nevertheless reached the correct result in denying the Writ of Mandate under the doctrine of visitorial powers, . . . .

The trial court did *not* believe that the doctrine of visitorial powers applied in this case, and neither do we.

■ In 17 Fletcher, Cyclopedia Corporations § 8426, pp. 425-426 (1960 Rev.), are stated the reasons for the visitorial power doctrine. The treatise reads:

Two major reasons influence courts of chancery to refuse to interfere in the management of the internal affairs of a foreign corporation: First, because the rights arising between a corporation and its members out of such management depend upon the laws of the state under which the corporation is organized. Second, the courts of that state afford the most appropriate forum for adjudication upon the relation between the stockholders and the corporation, and frequently such courts alone possess jurisdiction and power adequate to the enforcement of all decrees that justice may require. A third reason sometimes assigned is that commonly neither the officers, the governing body, nor the records of the corporation, are within the reach of the decrees, orders or processes of any except the domiciliary courts. (Footnotes omitted.)

The facts of the case now before this court and the legal question with which this case is concerned show that not one of the above reasons applies in this particular case. First, the rights of the litigants depend upon the interpretation of a United States congressional act, and the application of a basic tenet of United States constitutional law, and not the public policy or the statutes of Alaska.

Second, Washington provides a very appropriate forum for the adjudication of this controversy because the shareholder meetings are held in Seattle each year, and because the records of the corporation are kept at the general offices in Seattle. The availability of these corporate activities and records to the physical jurisdiction of the court is a very important consideration, almost a sine qua non, in the determination of the court's willingness to accept jurisdiction of a suit such as this. Once these requirements are met, other factors become more important in determining the appropriateness of the acceptance of jurisdiction, such as the nature of the issues, and the nature of the relief requested.

Third, the officers, the governing body, and the records of the corporation are all within the reach of the decrees of this court. Not only are all the shareholder meetings apparently held in Seattle, especially the annual meeting to elect directors, but also at least one third of the director meetings are held in Seattle, and the general offices of the company are in Seattle. If anything other than a declaratory judgment were necessary in this case, the decrees could be enforced. We have every reason to believe that all parties will respect the declaratory judgment of this court.

Respondent, Alaska Airlines, Inc., has cited, and quoted to the court some language from *Meade v. Pacific Gamble Robinson Co.*, 21 Wn.2d 866, 153 P.2d 686 (1944). That case concerns the issue of whether or not an appraiser appointment specifically provided for by Delaware law to be made by a Delaware court could be made by a Washington court in an action for appraisal brought in the state of Washington. In that case this court stated at the outset of the legal discussion in the opinion at 21 Wn.2d 870:

> Implicit in the contract of respondent shareholder with the corporation is the agreement of respondent that, in the event of the consolidation or merger of the corporation in which he owned shares of stock with another corporation, the question of payment to the dissatisfied stockholder of the value of his shares of stock was one for determination under the laws of the state of Delaware in which the corporation was organized. That being so, only the courts of the state of Delaware have the power to make the appointment of the third appraiser, which is shown in respondent's petition. Appellant has a right to have an appraiser appointed by the proper tribunal and we agree with counsel for appellant that appellant is certainly aggrieved if it is forced to have the matter of appraisers of respondent's shares of stock determined by appraiser whose appointment was void.

In other words, it appeared on the face of the Delaware statute that appellants in that case had a statutory right incorporated into their corporate contract to have respondent's shares appraised by an appraiser appointed by a Dela-

ware court. The Washington court was then asked to interpret the Delaware statute differently, so that a Washington court's appointment of an appraiser could be upheld. This request to interpret the statute was refused on the ground that the visitorial powers doctrine applied. The language quoted by Alaska Airlines, Inc., from the case of *Meade v. Pacific Gamble Robinson Co., supra,* came only at the point where this court was asked to exercise its sense of judgment on the meaning and the policy behind the statute. That was clearly not a proper function for the Washington court—only the Delaware court should be allowed to decide what the Delaware legislature meant by the statutory term "chancellor."

The case now before this court is significantly different. The precise issue of the present case is whether the United States Congress intended to incorporate a particular provision of the Oregon Constitution which existed in 1884 into the law of Alaska as of 1884. Nothing in the decision of the case depends on what the intent of the Alaska legislature may have been at any time with regard to any Alaska statute. The policy of the state of Alaska or the earlier policy of the Territory of Alaska is likewise immaterial because of the total lack of any reservation of power to alter, amend, or repeal corporation statutes prior to the incorporation of Alaska Airlines, Inc., in 1937. The rule of law which controls is the same in every jurisdiction, including Alaska. We are not holding any Alaska statute unconstitutional. We are holding simply that this universally accepted principle of law applies to Alaska Airlines, Inc.

For the reasons given above, we hold that the trial court's conclusions of law Nos. 2 and 3 are erroneous, and, hence, its judgment is reversed. The case will be remanded to the trial court with instructions to enter a conclusion of law finding that the bylaw amendment providing for direct voting only in the election of directors is ultra vires and, therefore, void.

It is so ordered.

FINLEY, WEAVER, OTT, and HAMILTON, JJ., concur.

ROSELLINI, C. J. (dissenting)—It is my opinion that the appellant is correct in its contention that the court should decline jurisdiction because the action was brought in an inconvenient forum.

This court has recognized and applied the doctrine that, ordinarily, courts will not intervene in controversies relating only to the internal management of the affairs of a foreign corporation, and such controversies must be settled by courts of the state creating the corporation.

Although it is stated in at least one Washington case (*Fuller v. Ostruske*, 48 Wn.2d 802, 296 P. 2d 996) that the courts of one state have no jurisdiction to exercise visitorial powers over foreign corporations, this is true only to the extent that the judgment of the court cannot be enforced within the state. If the court has jurisdiction over the necessary parties and the subject matter of the action, it can, of course, decide the case; but the question is whether it *should* do so. And, in fact, it was held in the later case of *Dudley v. Jack Waite Mining Co.*, 49 Wn.2d 867, 307 P.2d 281, that the assumption of jurisdiction is discretionary with the court. In that case, an Arizona corporation had its only office in Seattle and all of its officers resided there, and this court decided that it was proper to assume jurisdiction.

The corporation in this case was organized under the laws of Alaska and its bylaws, as amended to 1963, state that its principal place of business is Fairbanks, Alaska. It is true that it is licensed to do business here, and has its principal place of business in this state at Seattle. The record is not very conclusive about the place where the directors' meetings are held; and it appears that they are held in different places—sometimes in Seattle, sometimes in New York, and sometimes in Alaska. There was evidence that the recent annual stockholders' meetings have been held in Seattle, but there is no indication that the majority of shareholders reside in Seattle. The relator Starkey resides in Maryland; I have been unable to discover the residence of the relator Robinson.

It appears that some of the directors reside in Alaska, some in Seattle, and some in New York, and the principal residence of the president appears to be in Washington, D. C.

As far as convenience of the parties is concerned, then, there is no compelling reason why this suit should have been brought in Washington. And I believe that, insofar as the propriety of the decision is concerned, there is every reason why we should refuse jurisdiction.

It is important to bear in mind that this court is not determining the rights of any individual in this case. The terms of office of the directors elected pursuant to the direction of the trial court have expired, and the court cannot order any of them seated. What it is giving is a declaratory judgment, a judgment advising that shareholders of Alaska Airlines, Inc., may vote their shares cumulatively.

Assuming, without inquiring into the merits of the question, that this is a proper case for a declaratory judgment, I am firmly convinced that this is not the proper court to give it. In the case of *Meade v. Pacific Gamble Robinson Co.*, 21 Wn.2d 866, 153 P.2d 686, which the majority cite and attempt to distinguish, this court laid down a rule of law which is clearly applicable here. After citing the doctrine that controversies relating only to the internal management of the affairs of a corporation must be settled by courts of the state creating the corporation, this court said:

> Where, as in the case at bar, the controversy necessitates interpretation of a statute of the state creating the corporation, the general rule against interference with the internal affairs of a foreign corporation is strictly applied.

The United States Supreme Court, in discussing the factors which influence a court in deciding whether it should exercise jurisdiction over a case of this kind, in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 91 L. Ed. 1055, 67 Sup. Ct. 839, said:

> There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather

than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

The validity of these propositions should be evident here. This is *not* a localized controversy. It *is* a diversity case. It is concerned solely with the construction of statutes and constitutions; and although the majority state that they are not deciding the case on any statute, the opinion refutes this. Rejecting the opportunity to declare the Alaska statute unconstitutional, the majority state:

However, it is a basic rule of statutory construction that a statute should be construed so as to be constitutional, if reasonably possible.

We hold that the 1964 amendment to the Alaska Laws, § 10.05.162 (Laws of Alaska, 1957, chapter 126, § 31) was intended to apply only as provided in § 151, . . . .

The decision of this court will not be binding on the courts of Alaska or of New York. 20 Am. Jur. 2d § 204 at 538; 21 C.J.S. § 204 at 358. On the other hand, a decision of the Alaska court construing its own statutes would be followed by other states pursuant to conflict-of-laws principles. 20 Am. Jur. 2d § 206 at 539. True, the courts of this state can enforce cumulative voting if the shareholders' meetings are held here, but whether this procedure can be enforced if the meetings are held in Alaska or New York depends entirely on the discretion of the courts of those states.

If the answers to the legal questions presented in this case were clear and not reasonably debatable, I would see less objection to the court's entertaining jurisdiction of it. But I do not conceive them to be free of debate by any means, and I do not think it at all unlikely that the Supreme Court of Alaska would place a different interpretation on the acts of Congress and of the legislature of Alaska than that placed upon them by the majority; of this court. And the Alaska court, having greater familiarity with Alaska law, is in a better position than this court to decide what the statutes of that state mean.

This has not been an easy case for the court to decide.

The length of time it has been in its "bosom" attests to that. The court is hard pressed to decide all of the living controversies that come before it. Consequently, I would not render a declaratory judgment of such doubtful precedential value as this, but would leave the parties to seek a determination of their rights in the court best situated and qualified to resolve the dispute; the court whose decision, being a decision as to the meaning of its own laws, would presumably be respected and enforced by the courts of other jurisdictions when and if aspects of the same controversy come before them.

I would affirm the trial court on this ground.

HILL, HUNTER, and HALE, JJ., concur with ROSELLINI, C. J.

July 11, 1966. Petition for rehearing denied.

\*Reported in 413 P.2d 363.