[No. 37452. En Banc. April 7, 1966.]

THE STATE OF WASHINGTON, *on the Relation of Ralph W. Starkey, Respondent,* v. ALASKA AIRLINES, INC., *Appellant.*\*

\*Reported in 413 P.2d 363.

338

*Allen, DeGarmo & Leedy,* by *Stuart G. Oles* and *Dale R. Martin,* for appellant.

*Coney, Meade & Collier* and *Byron D. Coney,* for respondent.

DONWORTH, J.—This is a mandamus action brought by a director-elect of the defendant corporation to require it to allow him to inspect its books and records, to copy them, and for "such other relief as the court may deem just." The trial court ordered the defendant, Alaska Airlines, Inc., to allow the relator to inspect and copy the corporation books or records, and to admit him to the directorship to which

he was admittedly elected in August, 1963. Alaska Airlines, Inc., has appealed.

This case arose out of the struggle of the majority shareholder faction, controlled by the incumbent management of the airline, to deny the minority shareholder faction any representation on the board of directors of the airline.

The dispute arose in the following manner. In 1963, Ralph W. Starkey (respondent relator), Raymond W. Marshall, Homer W. Robinson, and Frank LaGrange, each of whom was a minority shareholder and previously interested in the corporation's affairs, solicited proxies sufficient to elect 3 of the 11 directors at the annual shareholders' meeting scheduled to be held in Seattle on August 6, 1963.

On the morning of August 6, 1963, the shareholders' meeting was convened in Seattle at the principal office of the company, and certain preliminary management speeches and entertainment were presented. However, no business was transacted before the minority shareholder faction was served with an ex parte temporary restraining order from the local federal district court which forbade the minority faction to vote its proxies on the ground that the solicitation material had violated regulations of the Securities and Exchange Commission of the federal government. The allegations of the complaint were read to the assembled shareholders after which the shareholder meeting was adjourned until August 20, 1963.

The minority shareholder faction protested in federal court concerning the lack of grounds for the complaint and the reading of the complaint before the shareholders' meeting, followed by the postponement of the meeting for 2 weeks. They argued that the delay, coupled with the reading of the complaint at the shareholders' meeting, gave the majority shareholder faction an additional 2 weeks within which to try to weaken the position of the minority faction by further proxy solicitation prior to the election. After several hearings in the federal court, the complaint was dismissed by stipulation of the parties, and the reconvened shareholders' meeting of August 20, 1963, was held.

The minority group retained their proxy strength and elected Starkey, Robinson, and Marshall as directors on August 20, 1963. They were certified as elected on August 23, 1963.

However, on August 20, 1963, after the election of directors was held, the incumbent board of directors (which did not include Starkey, Marshall, or Robinson) met and amended the corporate bylaws to provide that a qualification for a director was that he must not be in violation of the Federal Aviation Act, § 409(a), now codified as 49 U.S.C. § 1379, and hereinafter designated as § 409(a). This amendment of the bylaws further provided that the previously existing board of directors must meet to make prima facie findings as to the qualifications of all directors just elected with respect to § 409(a). This statutory provision is designed to prevent "interlocking relationships" among air carriers and the aircraft industry.

Following the directors' meeting held August 20, 1963, no further meeting was held until October 17, 1963, at which time the prior board of directors met in New York City and determined that Starkey, Marshall, and Robinson were prima facie in violation of § 409(a) and must obtain the approval of the Civil Aeronautics Board in order to qualify as directors under the new bylaw relating to violation of § 409(a). None of the directors-elect were advised of this meeting. The prior board of directors immediately called another board meeting to be held October 28, 1963, in Fairbanks, Alaska. Although Starkey, Marshall, and Robinson had not received notice of the October 17, 1963 meeting in New York, they were later notified of the action taken at that meeting, and were notified of the meeting scheduled for October 28, 1963, in Fairbanks.

A few days after the certification of the results of the election held August 20, 1963, the application for an alternative writ of mandamus and order to show cause was filed by Starkey in the Superior Court for King County. Due to various delays, mostly on the motion of the corporation, the matter was not heard at trial until October 22, 1963. The trial consumed 3 days, after which the trial court, on the

morning of October 25, 1963, orally granted the peremptory writ of mandamus. November 5, 1963, the trial court signed the written order of mandamus, which provided (1) that Starkey was entitled, and must be allowed, to inspect all corporate books and records, and (2) that he was entitled to, and must be given, all the rights and privileges of a duly elected director of Alaska Airlines, Inc. The corporation has appealed only from that portion of the order giving Starkey the rights and privileges of a director. The trial court granted supersedeas as to that portion of the order. Therefore, Starkey has not been treated as a director, but only as a shareholder, pending the result of this appeal.

It has been argued by appellant, Alaska Airlines, Inc., that this case is now moot, because (1) the minority shareholders can no longer elect directors because of a change of bylaws of Alaska Airlines, Inc., and (2) because Starkey is not currently entitled to sit as a director because he was not elected as a director at the August, 1965 shareholders' meeting.

In *State ex rel. Starkey v. Alaska Airlines, Inc.,* cause No. 37933, which was heard on appeal at the same time as this case now before the court, we decided that Starkey still has the right to vote his shares cumulatively. That decision is published *ante,* at p. 318, 413 P.2d 352 (1966).

Starkey was not elected in the August, 1965, shareholders' election of directors. This fact was disclosed at the time of reargument (second oral argument) before the court en banc. However, that does not mean that no controversy exists in this case between these parties. It would have been a useless act for him to have tried to be elected at that meeting because the 1965 annual shareholders' meeting was controlled by the majority shareholder faction, and only direct voting of shares would have been permitted, in view of the mistaken belief of the management that a valid bylaw had been adopted by the board of directors in June, 1964, which permitted only direct voting of shares. The vote for the directors who were elected at the 1965 annual meeting indicates that no shares previously controlled by the minority faction have come under the control of the majority faction.

■ It is reasonable at this time to assume that at the August, 1966, annual meeting the minority shareholder faction will endeavor to elect two directors using the cumulative voting method. If the minority shareholder faction is successful in so doing, then presumably the outgoing board of directors will again meet without notice to Robinson and Starkey and determine that they are prima facie in violation of § 409 (a) and will prevent the minority directors-elect from assuming office until their term again expires. In the interim, Alaska Airlines, Inc., management will again argue that the Civil Aeronautics Board (hereafter referred to as CAB) has primary jurisdiction of the dispute as to their qualifications under § 409 (a), which is one of the issues currently presented on this appeal. In other words, it is clear to this court that in a very real sense the present case and the basic issues presented by it are not moot.

The ultimate issue to be decided is whether the actions by the majority shareholder faction of Alaska Airlines, Inc., prior to the present suit can be used in perpetuity to prevent the seating of the minority directors prior to a submission of the qualifications of the directors-elect to the CAB, if such approval is needed. This issue is present in this whole continuing controversy.

The most important issue raised by Alaska Airlines, Inc., in the present case is the argument that the CAB has primary jurisdiction of this matter because the Federal Aviation Act, § 409 (a) is a federal statute which the United States Congress intended should be administered solely by the CAB. It is argued that § 409 (a) is a statute which is regulatory in nature and within the expertise of the CAB. Alaska Airlines, Inc., points out that it, as the regulated air carrier, could suffer a fine if it did not oppose the seating of Starkey, in view of what the airline considers to be a violation of § 409 (a). It is argued that CAB could apply other sanctions in the form of alteration or denial of a certificate for its interstate air routes and tariffs.

■ We have read the Federal Aviation Act, § 401 and § 409. We have no doubt that the dangers referred to by

Alaska Airlines, Inc., are possibilities. The authority of the CAB over an airline engaged in interstate air carrier service is so great that an airline should not be forced by any court of this state to seat a director who is in violation of § 409(a). There is no doubt, too, that the CAB has primary jurisdiction over any question of whether § 409(a) has been violated. *Far East Conference v. United States*, 342 U.S. 570, 96 L. Ed. 576, 72 Sup. Ct. 492 (1952); *General American Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 84 L. Ed. 361, 60 Sup. Ct. 325 (1940). Implicit in the concept of supercession applied by the United States Supreme Court in *Pan American World Airways, Inc. v. United States*, 371 U.S. 296, 9 L. Ed. 2d 325, 83 Sup. Ct. 476 (1963), are the premises that the CAB has (1) primary jurisdiction in those matters within the purview of the Federal Aviation Act, and (2) that if the CAB finds that certain circumstances amount to a violation of § 409(a) or do not amount to a violation of § 409(a), no other tribunal is competent to dispute this determination, regardless of what might otherwise be the jurisdiction of the agency or court in this matter. We believe that Alaska Airlines, Inc., is correct—the CAB does have primary jurisdiction over the question of a violation of Federal Aviation Act, § 409(a).

One year prior to the time this appeal was heard by this court the first time (March 23, 1965), the CAB filed order No. E 20604. This order grants a hearing, at a time and place to be determined, in Docket Nos. 14860 and 14894, which were consolidated by that order. The hearing will concern whether the interlocking relationships of Marshall should be approved by the CAB and whether Robinson and Starkey are the representatives, nominees, or agents of Marshall. No time or place for hearing has yet been set presumably due to inaction of Alaska Airlines, Inc., the moving party. This court is greatly concerned because of the long delay (now 2 years) since the Alaska Airlines invoked the jurisdiction of the CAB to decide the controversy as to Starkey's qualifications to sit as a director.

There is a possibility that the doctrine of primary jurisdiction has been invoked to delay the resolution of this

controversy. Originally, the airlines advised the trial court, during the trial, that an application to the CAB was then pending. This was not true. The order shows that the CAB received the application on December 2, 1963, more than 4 weeks after the entry of final judgment in the trial of this case. After the application was made, and tentative hearing granted, Alaska Airlines has done nothing to obtain a date for the hearing, although more than 2 years has elapsed since the application by Alaska Airlines, Inc., was filed with the CAB.

The CAB order came down on March 23, 1964. On March 10, 1964, 13 days before the CAB order was issued, the Alaska legislature amended the Alaska statute. Assuming that the management of Alaska Airlines, Inc., knew of the statute at the time it was passed, and had been planning to rely on the statute to enable the directors to amend the bylaws to provide for direct voting prior to the issuance of the CAB order, it is possible that Alaska Airlines, Inc., management believed it should proceed with the plan to amend the bylaws, and thereby rid itself of Mr. Starkey and Mr. Robinson without the expense, delay and uncertainty of result of a CAB hearing. It is only this possibility which restrains this court from treating this 2-year delay as deliberately dilatory in an attempt to avoid resolution of the problem before the CAB.

Alaska Airlines, Inc., representatives have represented to the trial court and to this court that the management of Alaska Airlines wants to exclude Mr. Starkey as a director only because he is allegedly in violation of § 409 (a), and that if the CAB finds that he is not in violation of § 409 (a), or if it approves the interlocking relationships which might exist, then he may sit as a director in so far as the management (which controls the majority faction) of Alaska Airlines, Inc., is concerned.

If this statement of its position is correct, we are unable to understand the reasons for making the various changes of its bylaws. The management of Alaska Airlines, Inc., was responsible for the change of bylaws hurriedly made in August, 1963, which permitted the outgoing board of

directors to determine the prima facie qualifications of the directors-elect. It also fostered the change of bylaws in June, 1964, which purported to eliminate the cumulative voting rights of shareholders. The only reasonable inference which we can draw from the adoption of both changes of bylaws is that the management of Alaska Airlines intends to decide for itself whether or not Mr. Starkey and Mr. Robinson will sit as directors, without regard to whether the CAB ever determines that they are in violation of § 409(a).

In view of these actions of Alaska Airlines in this litigation, we have no assurance that the matter will be expeditiously prosecuted before the CAB, even though that tribunal is held to have exclusive jurisdiction to decide whether Mr. Starkey and Mr. Robinson are qualified to sit as directors. If we were to dismiss the case at this time on the basis of primary jurisdiction in the CAB, Mr. Starkey and Mr. Robinson would have no way to require Alaska Airlines to proceed with the hearing before the CAB. Furthermore, because of the supersedeas of the trial court's judgment, which is in effect, if we simply remand this case to the trial court to await the outcome of the CAB hearing, we have no assurance that Alaska Airlines will not continue to delay the matter indefinitely.

■ The primary object of litigation is to have a competent tribunal arrive at a final judgment within a reasonable time.

■ This case and its companion case (No. 37933) are in such a posture at the present time that no effective relief can be granted the prevailing party until a decision on the issue of the qualifications of these two directors is received from the CAB. The failure of the Alaska Airlines to use reasonable diligence to obtain a hearing before that tribunal has resulted in an impasse which has lasted now for nearly 2 years since the CAB entered its order of March 23, 1964, in which it stated that it would hear the consolidated petitions (Docket Nos. 14860 and 14894) "at a time and place yet to be determined."

This court cannot permit this situation to continue. Litigation must terminate at some time before the fruits of the litigation are dissipated or the litigants are no longer living.

Therefore, we will suspend the entry of final judgment in this case for a period of 90 days from the filing of this opinion on the following conditions:

If a definite time and place of hearing is not obtained within that time, this court will hold that Alaska Airlines, Inc., has waived the primary jurisdiction of the CAB, and will proceed to decide this case on its merits. If a definite time and place of hearing is obtained within that time, the supersedeas will be continued in effect. This court will retain jurisdiction pending the outcome of the CAB hearing.

Alaska Airlines, Inc., shall file with this court, within the 90-day period, a report stating what steps it has taken to bring its petition on for hearing before the CAB. This court thereupon will enter such further order or render such judgment on the merits of this case as it deems appropriate.

It is so ordered.

FINLEY, WEAVER, OTT, and HAMILTON, JJ., concur.

ROSELLINI, C. J. (dissenting)—For the reasons stated in my dissent to Cause No. 37933, I would decline jurisdiction of this case. It is true that the appellant did not propose that solution to the trial court in this case. According to the appellant, it did not raise the question because it considered that since it was relying on its contention that the Civil Aeronautics Board has primary jurisdiction, the case is not concerned solely with the internal affairs of the corporation. However, in my opinion, this case in its final posture is simply an action to have the court declare certain directors qualified to hold office. The first point in issue is whether the board of directors can arrogate to itself the right to pass on the qualifications of its own members. Again, the court proposes to render a declaratory judgment (if the Civil Aeronautics Board does not relieve it of the necessity) and, again, it will have to make decisions regarding the internal affairs of a foreign corporation, neces-

sarily involving the interpretation and application of the law of a sister state.

This case is so closely related to Cause No. 37933 that I think the court can with impunity apply the doctrine which was relied upon and argued in that case. This would result in a dismissal of the case. I would so order.

HILL, HUNTER, and HALE, JJ., concur with ROSELLINI, C. J.

[Petition for rehearing denied July 11, 1966. By an order dated October 4, 1966, the Supreme Court, after hearing additional argument and considering affidavits and other documents filed by the parties, ruled that the issues raised by Cause No. 37452 were moot, and that the appeal should be dismissed.]